Maria Crimi Speth, #012574
David S. Gingras, #021097
**JABURG & WILK, P.C.**
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Attorneys for Defendants Edward
Magedson and Xcentric Ventures, L.L.C.

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| GLOBAL ROYALTIES, LTD., a Canadian corporation; BRANDON HALL, a Canadian citizen,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>XCENTRIC VENTURES, L.L.C. *et al.*,<br><br>　　　　Defendants. | Case No.: CV 07-956 PHX-FJM<br><br>**DEFEDANTS' REPLY RE: MOTION TO DISMISS (AMENDED PER ORDER DATED: AUGUST 3, 2007)**<br><br>(Assigned to Hon. Frederick J. Martone) |

Defendants EDWARD MAGEDSON ("Magedson") and XCENTRIC VENTURES, L.L.C. ("Xcentric") respectfully submit the following Reply to Plaintiffs' Response to Defendants' Motion to Dismiss.

**I.    ARGUMENT**

    **A.    Plaintiff Cites The Incorrect Standard For a 12(b)(6) Motion**

Before addressing the merits, it is worth noting that Plaintiffs' Response cites the rule from the U.S. Supreme Court's classic opinion of *Conley v. Gibson*, 335 U.S. 41 (1951) for the principle that a Complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that plaintiff can prove no set of facts entitling it to relief." Plaintiff's Response at 2:9–10 (citing *Resolution Trust Corp. v. Dean*, 854 F.Supp. 626, 631–32 (D.Ariz. 1994) (quoting *Conley*).

As it happens, the *Conley* "no set of facts" standard was recently abrogated by the United States Supreme Court in a strongly-worded opinion:

> We could go on, but there is no need to pile up further citations to show that *Conley's* "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the *Conley* Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. <u>But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard</u>: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations <u>in the complaint</u>.

*Bell Atlantic Corp v. Twombly*, 550 U.S. ___, 127 S.Ct. 1955, 1969 (2007) (emphasis added). As the Court explained in Twombly, the applicable rule is no longer whether it appears that Plaintiff "can prove no set of facts" to support its claim(s). Rather, as simply stated in Rule 12(b)(6), the Court should dismiss the Complaint if the allegations actually presented, assuming they are true, fail to state a viable claim. In other words, Defendants are not required to show that Plaintiff can prove no set of facts to support a claim. Rather, Defendants' only burden is to show that the facts as actually alleged do *not* state a claim. That showing has been made here because even taking all the allegations in Plaintiff's Complaint as true, none of them support any claim upon which relief could be granted by this Court.

**B.     The Statute of Limitation Has Expired (<u>Single Publication Rule</u>)**

As explained in the Motion to Dismiss, Plaintiffs' Complaint describes three separate statements which form Plaintiffs' defamation claim. The "first statement" set forth in ¶¶ 13, 14 of the Complaint, was allegedly published on <u>March 27, 2006</u>.

Defendants' motion argued that this "first statement" cannot state a claim for defamation because it is barred by the 1-year limitations period of A.R.S. § 12-541. *See Glaze v. Marcus*, 151 Ariz. 538, 729 P.2d 342 (App. 1986) (1-year limit on actions for

2

10297-1/DSG/DSG/605596_v1
Case 2:07-cv-00956-FJM     Document 17     Filed 08/24/2007     Page 2 of 11

1  libel/slander). As also noted in the motion, this 1-year period begins to run on the date of
2  <u>publication</u>, not the date the plaintiff discovers the publication. *See Lim v. Superior Court*,
3  126 Ariz. 481, 482, 616 P.2d 941, 942 (App. 1980).

4  In response, Plaintiff argues the statute of limitations has not expired because the
5  Defendants "adopted" (republished) the statement by refusing to remove it after it was
6  first published:

> Defendants first argue that the statute of limitations bars Plaintiffs'
> defamation claim as far as one of the defamatory statements is concerned.
> In this regard, Defendants rely on the date that the alleged defamatory
> statement was published by its original publisher, Spencer Sullivan, an
> individual who is not a party to this action. Defendants ignore, however,
> that Plaintiffs' defamation claim is based upon the allegations that
> Defendants <u>adopted the statement as their own and published the
> defamatory statements after the statements' original publication date.</u>

13 Plaintiffs' Resp. at 4:21–5:1 (emphasis added). It is true that ¶ 34 of the Complaint
14 alleges that "Defendants adopted the Statements [of Spencer Sullivan] as their own when
15 they refused to remove the Statements from the Ripoffreport.com Website …. ."
16  This argument requires two comments. First, Plaintiffs do not cite, and Defendants
17 have not found, any law which creates a new tort of "*adopting* someone else's defamatory
18 statement" by refusing to remove that statement from a prior publication. Indeed, to the
19 extent that Plaintiffs have sued Defendants for "defamation", and as cited in their
20 response, such a claim is founded in § 558 of the Restatement (Second) of Torts which is
21 quoted on Page 4 of Plaintiffs' Response. No element of this claim extends liability for
22 "adopting" a statement by refusing to remove that statement from a prior publication.

23  Second, although Plaintiffs' "guilt–by–adoption" argument is creative, for statute
24 of limitations purposes, it has already been expressly considered and rejected in the
25 context of website liability under the existing concept known as the "Single Publication
26 Rule". *See* Restatement (Second) of Torts § 577A (3) (explaining the basis of the Single
27 Publication Rule). In short, this rule provides that multiple broadcasts/publications of the
28 same statement are considered a single event which gives rise to only one cause of action.

3

Most states that have considered the issue have concluded that the Single Publication Rule applies to websites. *See generally* Sapna Kumar, *Website Libel And The Single Publication Rule*, 70 U. Chi. L. Rev. 639, 642 (2003) ("Most states follow the formulation of the single publication rule set forth in [§577A(3) of] the Restatement (Second) of Torts.") As explained in the University of Chicago Law Review article, Arizona was, in fact, the first state to adopt the rule in the context of websites:

> Courts have only begun to look at how to apply the single publication rule to libel on the Web. In 1999, Arizona became the first state to extend the single publication rule to the Web in a little known case, *Simon v Arizona Board of Regents*. In Simon, a libelous statement first appeared on a newspaper's website on October 9, 1997, and then appeared the next day in the printed version of the same newspaper. The plaintiff filed suit on October 13, 1998, four days after the statute of limitations had run on the website claim. But, because October 10, 1998 was a Saturday and October 12, 1998 was a holiday, <u>the filing was still timely *if a republication had occurred* on October 10, 1997, when the print edition of the newspaper was first published</u>.
>
> <u>The court found that the single publication rule applies to website publications</u>. Moreover, it found that the distribution of the same story in the print edition of the newspaper <u>did not constitute republication</u>. The statute of limitations therefore began to run on October 9, 1997, the day of publication on the newspaper's website. Thus, the libel claim was filed four days too late.

Kumar, 70 U. Chi. L. Rev. at 646–47 (citing *Simon v Arizona Board of Regents*, 28 Med L Rep 1240 (Ariz. Super. Ct. 1999)). Under the Single Publication Rule, it is irrelevant that Defendants have refused to remove a statement published in March 2006 by a third party. This is so because under the rule, as the Court held in *Simon*, the statute of limitations begins to run on the first date the statement was published, and no secondary causes of action are created even if the same statement is subsequently "republished" (or "re-adopted"). *See Van Buskirk v. New York Times Co.*, 325 F.3d 87, 89 (2nd Cir. 2003) (finding single publication rule applies to websites and "<u>single publication rule states that a defamation claim accrues at publication, defined as "the earliest date on which the work was placed on sale or became generally available to the public</u>.") (emphasis added)

4

Case 2:07-cv-00956-FJM   Document 17   Filed 08/24/2007   Page 4 of 11

1  (quoting *Tomasino v. William Morrow & Co.*, 174 A.D.2d 734, 571 N.Y.S.2d 571, 572
2  (2d Dept.1991)); *see also The Traditional Cat Ass'n v. Gilbreath,* 118 Cal. App. 4th 392,
3  13 Cal. Rptr. 3d 353 (2004) (single publication rule applies to statements on websites);
4  *Mitan v. Davis,* 243 F. Supp. 2d 719, 721 (W.D. Ky. 2003) (same rule); *McCandliss v.*
5  *Cox Enterprises, Inc.*, 265 Ga. App. 377, 593 S.E.2d 856 (2004)).

The Single Publication Rule prohibits Plaintiffs from attempting to bypass the applicable 1-year statute of limitations by daisy-chaining multiple causes of action based on the republication and "adoption" of the same statement. Therefore, because ¶ 13 of the Complaint alleges that the "first statement" was published by Spencer Sullivan on March 13, 2006, and because this action was commenced more than one year after that date, Plaintiffs' defamation claim is time-barred pursuant to A.R.S. § 12-541 to the extent it is factually based on "adopting" this "first statement".

### C. The "Second Statement" Is Not Actionable

Defendants' Motion to Dismiss also explains that a "Second Statement" published on June 8, 2006 (described in ¶ 15 of the Complaint) is subject to dismissal because the statement is simply not defamatory as to Plaintiffs and is thus non-actionable as a matter of law for two different reasons. First, the "second statement" was not actionable by Plaintiffs because part of the statement only concerned third parties and the law does not permit a plaintiff to recover for "relational defamation" (i.e., where the statements are defamatory as to a third party and not directly "of and concerning" the plaintiff).

Second, the remaining part of the "second statement" (in which Mr. Sullivan stated that Plaintiffs threatened him with legal action) was not actionable because the statement was undeniably true. In fact, ¶ 18 of the Complaint *confirms* that Plaintiffs' attorneys' contacted Mr. Sullivan and expressly or impliedly threatened him with legal action. ¶ 22 of the Complaint confirms that Plaintiffs subsequently followed through with their threats and, in fact, sued Spencer Sullivan in Canada.

Oddly, Plaintiffs' Response brief does not dispute, or even address, any of Defendants' arguments regarding the "second statement". In fact, Plaintiffs have not

5

10297-1/DSG/DSG/605596_v1
Case 2:07-cv-00956-FJM    Document 17    Filed 08/24/2007    Page 5 of 11

1 responded in any manner whatsoever to the merits of those arguments other than to generally suggest that: "A motion to dismiss is not to be used as a procedure for resolving a contest about the facts or merit of the case." Pla. Resp. at 2:15–16 (quoting *J.K. v. Dillenberg*, 836 F.Supp. 694, 700 (D.Ariz. 1993)).

In a vacuum, Plaintiffs' statement of this point is surely correct; when considering a Rule 12 Motion, a Court must assume the allegations in the Complaint are true and limit the inquiry to the Complaint. Thus, the determination of a Rule 12 motion generally does not extend beyond the facts of a case except as they are pleaded in the Complaint.

However, by the same token, it is equally clear that a Motion to Dismiss under Rule 12(b)(6) should be granted where, as here, the facts in the Complaint—assuming them to be true—do not state a viable claim; "The motion under subdivision (b)(6) is available to test a claim for relief in any pleading, whether it be in the plaintiff's original complaint, a defendant's counterclaim, a defendant's cross-claim or counterclaim thereto … . [O]n a motion under Rule 12(b)(6), the district court's inquiry essentially is limited to the content of the complaint … ." Charles Alan Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. Civ.3d § 1356 (internal citations omitted).

Here, the "second statement" as alleged in the Complaint contains statements which: A.) are not defamatory as to Plaintiffs; and B.) which are otherwise true. The "third statement" merely repeats the true fact that Plaintiffs threatened to take legal action against Spencer Sullivan. Each of these conclusions are based solely on the allegations of the Complaint and are therefore properly resolved in a Rule 12 motion. Since these allegations *cannot* support a defamation claim as a matter of law, Defendants' motion should be granted as to the "second" and "third" statements.

**D. Defendants Are Entitled to Immunity Under The Communications Decency Act**

Despite extensive briefing in Defendants' Motion to Dismiss regarding the Communications Decency Act, Plaintiffs cite one single case for the premise that the CDA does not apply here—*Hy Cite Corp. v. BADBUSINESSBUREAU.COM, L.L.C.*, 418

6

F.Supp.2d 1142 (D.Ariz. 2005). In short, Plaintiffs argue that Defendants' CDA-based defense was rejected in *Hy Cite* in a Rule 12 context, and therefore the same result must follow here.

The flaw with this argument is that in *Hy Cite*, the plaintiff alleged (albeit falsely) that Defendants produced/created original defamatory content about the Plaintiff, Hy Cite Corporation. As in this case, Defendants moved to dismiss pursuant to Rule 12(b)(6) arguing that they were entitled to protection under the Communications Decency Act.

Assuming the allegations in *Hy Cite's* Complaint were true, Judge Carroll rejected Defendants' CDA-based argument because:

> This argument ignores *Plaintiff's allegations* that wrongful content appears on the Rip-off Report website in editorial comments ***created by Defendants*** and titles to Rip-off Reports, which Defendants allegedly provide. … Taking Plaintiff's allegations as true, [cite] Defendants are not entitled to immunity under the CDA at this stage of the case.

*Hy Cite*, 418 F.Supp.2d at 1149 (emphasis added). This holding was based on the unique factual allegations in *Hy Cite's* Complaint which are not analogous to the allegations at issue in the case at bar (because Plaintiffs do NOT allege that Defendants created any of the defamatory statements authored by a third party; Spencer Sullivan).

In short, as explained in Defendants' Motion to Dismiss, they are entitled to protection under the CDA for any content created by a third party; "[The CDA's] provisions set up a complete shield from a defamation suit for an online service provider, absent an affirmative showing that the service was the actual author of the defamatory content." Jay M. Zitter, J.D., Annotation—*Liability of Internet Service Provider for Internet or E–mail Defamation* § 2, 84 A.L.R.5th 169 (2000). Plaintiffs do not dispute this is an accurate statement of the controlling law.

Unfortunately, other litigants in other cases filed against Defendants (such as Hy Cite) learned that they could defeat a Rule 12(b)(6) motion in a lawsuit against Xcentric by simply alleging (without any basis to do so) that Defendants affirmatively created

7

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

defamatory content about the plaintiff. Because the CDA would not apply in that context, other cases have been filed which include these allegations, including the *Hy Cite* litigation. Obviously, Rule 11 notwithstanding, these allegations are sufficient to defeat a Rule 12(b)(6) motion because in that posture, the Court must assume the allegation are true, even if they are not.

Because *Hy Cite* alleged that Defendants actually created the defamatory content at issue, the Court found that it could not grant Defendants' Motion to Dismiss *at that stage*. However, this is irrelevant to the issue before this Court because here, Plaintiffs have <u>not alleged</u> that defamatory content was written by Defendants. Indeed, in ¶¶ 12–16 the Complaint clearly alleges that all defamatory statements were created by a third party named <u>Spencer Sullivan</u>. Unlike in *Hy Cite*, nowhere in the Complaint is there any allegation that any defamatory content was actually created by Defendants.

The only theory presented for which Plaintiffs seek to impose liability upon Defendants is set forth in ¶¶ 18–21 under the heading "***Defendants' Responsibility for the Defamatory Statements***". There, Plaintiffs allege that they contacted Mr. Sullivan to dispute his statements (¶ 18), and based on this Mr. Sullivan contacted Defendants to demand that Defendants remove them (¶ 19), which Defendants declined to do (¶¶ 19, 20). Thus, Plaintiffs' theory appears to be that Defendants are "responsible" for Mr. Sullivan's defamatory statements because they refused to remove them upon request.

However, this <u>exact</u> argument was expressly rejected by the Fourth Circuit in one of the most famous and widely accepted CDA cases; *Zeran v. America Online, Inc*., 129 F.3d 327 (4th Cir. 1997). In *Zeran*, an unknown third party posted a hoax advertisement on an AOL message board promoting T-shirts which mocked the April 19, 1995 bombing of the Alfred P. Murrah Federal Building in Oklahoma City. The advertisement falsely suggested it had been created by the plaintiff, Ken Zeran. *See Zeran*, 129 F.3d at 329.

When AOL failed to immediately remove the posting, Zeran sued AOL and others (but not the original creator of the hoax), and the District Court granted a Rule 12 Motion for Judgment on the Pleadings in favor of AOL based on the CDA.

8

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

On appeal, Zeran argued that AOL was not entitled to CDA immunity because it had become responsible for that content: "AOL unreasonably delayed in removing defamatory messages posted by an unidentified third party, refused to post retractions of those messages, and failed to screen for similar postings thereafter." *Id*. at 328.

Rejecting these arguments, the Fourth Circuit *affirmed* the District Court's dismissal of the case based on the CDA, finding that Congress' intent was clear: "lawsuits seeking to hold a [website] service provider liable for its exercise of a publisher's traditional editorial functions--such as deciding whether to publish, <u>withdraw</u>, postpone or alter content--<u>are barred</u>." *Id*. at 330 (emphasis added). This is exactly the same theory asserted by Plaintiffs here—that Defendants became "responsible" (liable) when they received notice that Mr. Sullivan wanted his reports removed. But this theory was consider and rejected by the *Zeran* Court as plainly contrary to Congress' intent:

> Liability upon notice would defeat the dual purposes advanced by § 230 of the CDA. Like the strict liability imposed by the *Stratton Oakmont* [*v. Prodigy Servs. Co.*, 1995 WL 323710 (N.Y.Sup.Ct. 1995)] court, <u>liability upon notice reinforces service providers' incentives to *restrict speech* and *abstain* from self-regulation</u>.
>
> If computer service providers were subject to distributor liability, they would face potential liability each time they receive notice of a potentially defamatory statement--from any party, concerning any message. Each notification would require a careful yet rapid investigation of the circumstances surrounding the posted information, a legal judgment concerning the information's defamatory character, and an on-the-spot editorial decision whether to risk liability by allowing the continued publication of that information. <u>Although this might be feasible for the traditional print publisher</u>, <u>the sheer number of postings on interactive computer services would create an impossible burden in the Internet context</u>.
>
> \* \* \*
>
> Because <u>the probable effects of distributor liability on the vigor of Internet speech and on service provider self-regulation are *directly contrary* to § 230's statutory purposes, we will not assume that Congress intended to leave liability upon notice intact</u>.

*Id*. at 333 (emphasis added). This same result should apply here.

9

10297-1/DSG/DSG/605596_v1
Case 2:07-cv-00956-FJM   Document 17   Filed 08/24/2007   Page 9 of 11

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

## II. ARGUMENTS RE: ENFORCEMENT OF CANADIAN JUDGMENT

### A. The Canadian Judgment Is Interlocutory

In their Motion to Dismiss, Defendants raised numerous arguments against the enforcement of the Canadian order in this court. Perhaps the most obvious of these was the fact that § 482 of the Restatement (Third) of Foreign Relations Law (1987) limits enforcement to only <u>final</u> judgment from foreign courts. Here, Plaintiffs do not dispute that the "judgment" they seek to enforce here is essentially a preliminary injunction, not a final judgment.

In addition, Plaintiffs do not dispute the general rule that *interlocutory* injunctions are presumptively <u>not</u> entitled to recognition; "<u>Judgments granting injunctions</u>, … <u>are not generally entitled to enforcement</u> [in the receiving forum] … ." Comment "b" to Section 481 of the Restatement (emphasis added). Likewise, Plaintiffs omit any response to Defendants' arguments that the Canadian "judgment" (order) is not entitled to enforcement here because it is repugnant to the laws of the United States.

Finally, Plaintiffs fail to respond to Defendants' assertions that the Canadian judgment is void for lack of personal jurisdiction even though *plaintiff* bears the burden of demonstrating the existence of jurisdiction. *See generally Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (noting that where personal jurisdiction is disputed, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.")

## III. CONCLUSION

For all of the reasons stated above, Defendants respectfully request an order dismissing Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

DATED this 24th day of August 2007.

**JABURG & WILK, P.C.**

/s/ David S. Gingras
Maria Crimi Speth
David S. Gingras
Attorneys for Defendant Xcentric
Ventures, L.L.C. and Ed Magedson

10

10297-1/DSG/DSG/605596_v1

Case 2:07-cv-00956-FJM   Document 17   Filed 08/24/2007   Page 10 of 11

**Certificate of Service**

I hereby certify that on August 24, 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Donald Joseph Karl
Andre H. Merrett
Deana S. Peck
Quarles & Brady, LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004
Attorneys for Plaintiffs

And a copy of the foregoing hand delivered on August 24, 2007, to:

Honorable Frederick J. Martone
United States District Court
District of Arizona

s/Debbie Gower

11